UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHELSIE JOHNS,

     Plaintiff,

v.

OAKLAND COUNTY, GENEFER
HARVEY, DANIEL MANIER,
HALE, and VEIT, in their individual
and official capacities,

     Defendants.

Case No. 15-cv-12924
Honorable Laurie J. Michelson
Magistrate Judge Anthony P. Patti

---

**OPINION AND ORDER GRANTING OAKLAND COUNTY'S MOTION TO DISMISS [6] AND GRANTING IN PART AND DENYING IN PART HARVEY, MANIER, HALE, AND VEIT'S MOTION TO DISMISS [17]**

---

Plaintiff Chelsie Johns alleges that officers of the Oakland County Sheriff's Department violated her rights under the United States Constitution and Michigan civil-rights legislation by using excessive force to arrest her and then strip-searching her while booking her into jail. Defendants have moved to dismiss her claims, in part based on Johns' later plea of guilty to attempting to resist arrest based on the same incident. The Court agrees with Defendants that Johns has not stated a claim under *Monell* or Michigan's Elliott-Larsen Civil Rights Act. However, the Court finds that *Heck v. Humphery*, 512 U.S. 477 (1990), does not bar Johns' excessive force claim because "lack of excessive force" is neither an element of the resisting arrest statute nor an affirmative defense. And Johns' allegations that she was strip-searched in an abusive manner in the presence of male guards plausibly state a violation of a clearly-established constitutional right. Accordingly, Oakland County's motion to dismiss will be granted, and the officer-defendants' motion will be granted in part.

## I.  ALLEGATIONS OF THE COMPLAINT

The Court recites as fact the non-conclusory allegations of Johns' Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

On August 24, 2013, Plaintiff Chelsie Johns attended a concert at DTE Music Theatre in Clarkston, Michigan. (R. 1 at ¶ 11.) At the time, she had a broken right ankle, which was wrapped in an ACE bandage with an air cast. (*Id.* at ¶ 13.) She was limping when she approached the entrance gate. (*Id.*) DTE Security mistakenly believed that Johns was intoxicated due to her limp and denied her entry to the venue. (*Id.* at ¶ 14.) Instead, they directed Johns to the first-aid tent. (*Id.* at ¶ 15.) Johns first refused, but then complied. (*Id.* at ¶¶ 15–16.)

At the tent, Officers Harvey and Manier approached Johns and asked her to receive first aid. (*Id.* at ¶ 18.) After Johns refused, Harvey and Manier escorted her away from the tent. (*Id.* at ¶ 19.) Harvey and Manier then "slammed Plaintiff to the ground," "pulled Plaintiff's head back and pushed her face into the ground," and finally, either Harvey or Manier "placed [his] knee on Plaintiff's back and forcefully handcuffed her." (*Id.* at ¶¶ 20–22.)

Plaintiff was then transported to the Oakland County Jail. (*Id.* at ¶ 23.) She was strip-searched by female Officers Hale and Veit, during which "her clothes were ripped from her body." (*Id.*) The strip search was conducted in the presence of male officers. (*Id.* at ¶ 24.)

Plaintiff was charged with one count of attempted assault of a police officer, Michigan Compiled Laws § 750.81D1, and one count of disorderly person—drunk, Michigan Compiled Laws § 750.1671E. (R. 17-2.) She was convicted of both offenses when she entered a plea of guilty on February 3, 2014. (*Id.*)

On August 17, 2015, Johns filed suit in this Court under 42 U.S.C. § 1983 and Michigan law. (R. 1.) She named as defendants Oakland County, Harvey, Manier, Hale, and Veit. (*Id.*) In

Count I, she asserts that "Defendants," presumably Harvey and Manier, violated the Fourth Amendment of the United States Constitution by using excessive force when they arrested her. In Count II, she asserts that the strip search at the jail by "Defendants," presumably Hale, Veit, and Oakland County, violated her rights under the Fourth and Fourteenth Amendments. In Count III, she asserts that "Defendants," presumably Hale, Veit, and Oakland County, violated Michigan's Elliott Larsen Civil Rights Act ("ELCRA") by strip searching her in front of male officers. In Count IV, she asserts a *Monell* claim against Oakland County.

Oakland County filed its motion to dismiss on September 11, 2015, and the officer defendants filed their motion to dismiss on November 3, 2015. (R. 6, R. 17.) Both motions are fully briefed. After careful consideration of the briefs and thorough review of the pleadings, the Court finds that oral argument will not aid in resolving the pending motion. See E.D. Mich. LR 7.1(f)(2).

## II.  LEGAL STANDARD

When a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although this plausibility threshold is more than a "sheer possibility that a defendant . . . acted unlawfully," it is not a "'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its

judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

## III. ANALYSIS

The pending motions implicate issues of both substantive law and proper pleading. Johns' excessive force claim requires the Court to address an issue that is fairly new: whether, given the Michigan Supreme Court's holding in *People v. Moreno*, 814 N.W.2d 624 (Mich. 2012), the Michigan statute criminalizing resisting arrest requires the prosecution to show a lack of excessive force such that success on an excessive-force claim in a subsequent civil suit would necessarily imply that the conviction is invalid. The Court holds it does not, and therefore Johns' excessive force claim will survive. Defendants' other arguments implicate Rule 12(b)(6)'s plausibility requirements. While the Court finds that Johns has adequately pled her § 1983 claim relating to the strip search, her claims under *Monell* and ELCRA will be dismissed as inadequately pled.

### A. Count I: § 1983 Excessive Force

Under *Heck v. Humphery*, a plaintiff may not assert a § 1983 claim that would "necessarily imply the invalidity" of an underlying criminal conviction. 512 U.S. 477, 487 (1990). This rule is based on "concerns for finality and consistency," and a general trend of "declin[ing] to expand opportunities for collateral attack" of state-court convictions. *Id.* at 485. Therefore, under *Heck*, "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction . . . has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Id.* at 486–87.

4

The Supreme Court has pointed out that in *Heck*, it "stress[ed] the importance of the term 'necessarily.'" *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). So "[t]he mere fact that the conviction and the § 1983 claim arise from the same set of facts is irrelevant if the two are consistent with one another." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010). With respect to excessive force, a conviction is inconsistent only if (1) "the criminal provision makes the lack of excessive force an element of the crime," *id.*, or (2) "excessive force is an affirmative defense to the crime[.]" *Id.*

Because Johns pled guilty to attempted assault of a police officer under Michigan Compiled Laws § 750.81d(1), the question here is whether lack of excessive force is an element of that offense, or an affirmative defense to that offense, such that Johns' § 1983 claim is barred by *Heck*. *Schrieber*, 596 F.3d at 334. (R. 17 at 4.) For the reasons that follow, the Court finds that *Heck* does not bar Johns' excessive force claim.

Prior to *People v. Moreno*, 814 N.W.2d 624 (Mich. 2012), the Michigan Court of Appeals held that "lawfulness of the arrest" was not an element of Michigan Compiled Laws § 750.81d. *People v. Ventura*, 262 Mich. App. 370 (Mich. Ct. App. 2004). The Court reasoned that there was no reference to "lawfulness" in the statutory language, and further, the common-law right to resist an unlawful arrest was "outmoded." *Id.* at 376. Thus, in *Schrieber*, the Sixth Circuit, relying in part on *Ventura*, held that a plaintiff convicted under Michigan Compiled Laws § 750.81d(1) could still pursue an excessive force claim. *Schreiber*, 596 F.3d at 334 ("[T]he Court of Appeals of Michigan has found that a lawful arrest is not one of the elements of § 750.81d(1)." (citing *Ventura*, 686 N.W.2d at 752)); *see also Shirley v. City of Eastpointe*, No. 11-14297, 2013 WL 4666890, at *7 (E.D. Mich. Aug. 30, 2013) (allowing an excessive force

5

claim to proceed despite Defendants' *Heck* argument because "The ruling in *Schreiber* applies with full force here.").

But in *Moreno*, the Michigan Supreme Court overruled *Ventura*. 814 N.W.2d at 634. After examining the statute's legislative history and the common-law "right to resist an unlawful act by an officer," the Court concluded that Michigan Compiled Laws § 750.81d did not "abrogate" the "common law right to resist an unlawful arrest." *Id.* While the Court in *Moreno* "did not explicitly state, in so many words, that the lawfulness of the officers' actions is an 'element' of resisting or obstructing a police officer," it was "clear that under *Moreno*, as at common law, the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d." *People v. Quinn*, 853 N.W.2d 383, 388 (Mich. App. 2014).

Whether "lawfulness" as referred to in *Moreno* includes a lack of excessive force is central to Defendants' *Heck* argument. Courts have declined to reach the issue because the conduct and convictions involved occurred while *Ventura*, not *Moreno*, was the law, *e.g.*, *Cummings v. Lewis*, No. 303386, 2012 WL 2579678, at *2, n.3 (Mich. Ct. App. July 3, 2012), or because the conduct giving rise to the excessive force claim occurred after the arrest was effectuated, *e.g.*, *Flanigan v. Cty. of Oakland*, No. 15-12504, 2016 WL 304763, at *2 (E.D. Mich. Jan. 26, 2016). Here, the conduct and conviction occurred on August 24, 2013, and February 3, 2014, respectively—well after *Moreno* was decided. Moreover, the allegations giving rise to Johns' excessive force claim occurred before the arrest was completed. (R. 1 at ¶¶ 20–22.)

So the Court must examine whether "lawfulness of the arrest" includes a "lack of excessive force." One other court in this district has reached this question, and it framed the issue as follows:

> [I]f lawfulness is now an element of the crime of resisting, is 'lawfulness' to be defined as an arrest without excessive force, so that a necessary element of the crime of resisting is proof of a lack of excessive force? If the answer is yes, then a § 1983 claim of excessive force would negate an element of the crime to which Plaintiff pleaded guilty and would be barred by *Heck*. Even if the lack of excessive force is not an express element of the crime of resisting by virtue of the holding in *Moreno*, does *Moreno* suggest that excessive force is now an affirmative defense to the crime of resisting? If yes, then under the second scenario recognized in *Schreiber*, Plaintiff's excessive force claim would be barred by *Heck*.

*Nelson v. Green Oak Twp.*, No. 14-10502, 2016 WL 233100, at *14 (E.D. Mich. Jan. 20, 2016). The *Nelson* court answered "no" to both questions and allowed the excessive force claim to move forward. *Id.* at *25. Though *Nelson* is not binding, this Court reaches the same conclusion.

Post-*Moreno* cases suggest that lack of excessive force is not part of the "lawfulness of the arrest." In *Cummings v. Lewis*, No. 303386, 2012 WL 2579678 (Mich. Ct. App. July 3, 2012), the plaintiff brought an excessive force claim after pleading guilty to resisting arrest under a city ordinance similar to Michigan Compiled Laws § 750.81(d)(1). While the court ultimately decided that *Ventura*, not *Moreno*, applied to defendants' *Heck* challenge, it noted: "[D]efendant would have this Court hold that use of excessive force renders an arrest unlawful. Defendant does not cite any case law in support of this proposition, and we do not read our Supreme Court's decision in *Moreno* to compel such a ruling." *Id.* at *2 n.3.

In *People v. Rolland*, No. 322788, 2015 WL 9258236, at *3 (Mich. Ct. App. Dec. 17, 2015), the defendant, convicted of resisting arrest in violation of Michigan Compiled Laws § 750.81d(1), argued on appeal that the court failed to properly instruct the jury regarding his "defense" that the officer used excessive force to arrest him. The court rejected this argument:

"Defendant [argues] that the arrest was rendered unlawful by the claimed use of excessive force on the part of the police. However, the common-law right to resist an unlawful arrest arises where the initial arrest itself was unlawful." *Id.* at *3.

In *People v. Vandenberg* the Michigan Court of Appeals, addressing the meaning of a "lawful arrest" in the context of Michigan Compiled Laws § 750.81d(1), equated a lawful arrest with having probable-cause for the arrest:

> [P]ursuant to *Moreno*, the lawfulness of the arrest was an element of the offense . . . . For an arrest to be lawful, the police officer making the arrest must have probable cause, either that a felony or misdemeanor was committed by the individual in the officer's presence, or that a felony or specified misdemeanor (i.e., a misdemeanor punishable by imprisonment for more than 92 days) occurred outside the officer's presence and that the individual in question committed the offense.

859 N.W.2d 229, 237 (Mich. Ct. App. 2014). The court did not refer to the officer's use of force as part of this analysis.

Another post-*Moreno* criminal case similarly suggests that the prosecution is not required to establish lack of excessive force as part of a resisting arrest prosecution. In *People v. Easley*, No. 325827, 2016 WL 1579029, at *3 (Mich. Ct. App. Apr. 19, 2016), the defendant appealed his conviction under Michigan Compiled Laws § 750.81d(1), alleging that he was charged in order "to cover up a civil suit against the county" for the police officer's use of force. *Id.* at *3. Finding that *Moreno* applied, the court concluded that "the prosecution was required to establish that [the arresting officer's] actions were lawful." *Id.* In making that determination, the court stated: "A court may temporarily remove disruptive and disorderly persons from the courtroom. . . . [Also,] [a] law enforcement officer may make a lawful arrest when a person commits a felony or misdemeanor in the officer's presence." *Id.* Because the prosecution had shown that both of

these conditions were met, the conviction was upheld. *Id.* Yet, the court made no mention of the officer's use of force. *See id.*

As for whether excessive force is an affirmative defense to resisting arrest, at least one post-*Moreno* case suggests that it is not. In a footnote, the court in *Cummings* stated, "*Moreno* does not stand for the proposition that excessive force is an affirmative defense to resisting a lawful arrest. Rather it stands for the rule that MCL 750.81d did not abrogate the common-law right to resist unlawful arrests and unlawful entries." 2012 WL 2579678 at *2 n.3. And a pre-*Moreno* case, *People v. Hill*, No. 283951, 2009 WL 1830750, at *3 (Mich. Ct. App. June 25, 2009), declined to hold that excessive force was an affirmative defense to resisting because "defendant fail[ed] to present any authority to indicate that the alleged use of excessive force by police is a valid defense to resisting and obstructing."

Moreover, the foregoing authorities reflect Michigan's pre-*Ventura* precedent. *See Peole v. Appleton*, No. 290692, 2011 WL 255302, at *4 (Mich. Ct. App. Jan. 27, 2011) ("Under the common law and Michigan's earlier resisting arrest statute, MCL 750.479, it was necessary to prove as an element of the offense of resisting arrest that the defendant was subject to a lawful arrest."). For instance, in evaluating a claim of assault and battery by an arrestee, the Michigan Court of Appeals affirmed jury instructions stating, "an arresting officer may use such force as is reasonably necessary to effect a lawful arrest. However, an officer who uses more force than is reasonably necessary to effect a lawful arrest, commits a battery upon the person arrested." *White v. City of Vass*ar, 403 N.W.2d 124, 130 (1987); *see also Young v. Barker*, 405 N.W.2d 395, 402 (1987). Thus, "[w]here an officer uses excessive force, he may be held liable for assault and battery even where the arrest is valid." *Gaddis v. Redford Twp.*, No. 242831, 2004 WL 243363, at *4 (Mich. Ct. App. Feb. 10, 2004) (citing *White*, 403 N.W.2d at 130).

9

Further, Michigan's criminal model jury instructions provide,

(1) An arrest is legal if it is:

[Choose one of the following:]

> (2) Made by an officer relying on an arrest warrant for the defendant issued by a court.

> (3) Made by an officer for a crime that [(he / she) reasonably believed] was committed in [his / her] presence, if it was made as soon as reasonably possible afterward.

> (4) Made by an officer who had reasonable cause to believe that the crime of _____ was committed by the defendant. "Reasonable cause" means having enough information to lead an ordinarily careful person to believe that the defendant had committed the crime of _____.

> (5) Made by an officer for [state other basis].

M Crim JI 13.5, Legal Arrest. Although, at the time of drafting, "[t]he committee believ[ed] that that legality of the arrest [was] no longer an element of the offenses found at MCL 750.81d," Committee Note to M Crim JI 13.5, the instruction is still used "when the legality of the arrest is in dispute," M Crim JI 13.5, Legal Arrest. And the jury instruction says nothing about excessive force.

Collectively, the foregoing authorities strongly suggest that a Michigan police officer can, in the process of making a lawful arrest, use excessive force. In other words, the use of excessive force during or to effectuate an otherwise lawful arrest does not render the arrest unlawful. This in turn means that a conviction under the resisting-arrest statute does not trigger *Heck*'s bar to a § 1983 excessive-force suit. Furthermore, while Michigan law is at issue here, it is worth noting that other circuits have reached similar results in the context of other states' resisting-arrest statutes. *See Colbert v. City of Monticello, Ark.*, 775 F.3d 1006, 1008 (8th Cir. 2014) (collecting cases); *Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 (3d Cir. 2008) ("It is

10

conceivable that a law enforcement officer, acting within the scope of his official duties, may use force that is excessive in effectuating a lawful arrest."); *Martinez v. City of Alburquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999) ("The state court's finding that Martinez resisted a lawful arrest . . . may coexist with a finding that the police officers used excessive force to subdue him. In other words, a jury could find that the police officers effectuated a lawful arrest of Martinez in an unlawful manner.").

Johns' excessive force claims will thus not be dismissed pursuant to *Heck*.

## B.  Count II: Unreasonable Search

Qualified immunity shields government officials performing discretionary functions from suit under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court asks, "(1) whether the plaintiff has shown a violation of a constitutionally protected right; and, if so, (2) whether that right was clearly established such that a reasonable official would have understood that his behavior violated that right." *Shehee v. Luttrell*, 199 F.3d 295, 299-300 (6th Cir. 1999). The Court can consider the questions in any order in its discretion. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In the context of a motion to dismiss, "[t]he test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562–63 (6th Cir. 2011). The Court finds that the Complaint plausibly alleges that Hale and Veit violated Johns' clearly established constitutional right to be free of an overly intrusive search not reasonably related to a legitimate penological interest.

11

Johns is not disputing that, as a general matter, strip searches of pretrial detainees are constitutionally permissible. (R. 18, PID 226.) A recent Supreme Court case explains why. In *Florence v. Board of Chosen Freeholders*, 132 S.Ct. 1510 (2012), the Court considered a class action by pretrial detainees challenging a New Jersey county's practice of routine strip searches for incoming detainees, "regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history." *Id.* at 1514. The search was conducted "without touching the detainees[.]" *Id.* at 1514.

The Court began by observing that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Id.* at 1517. But, the Court reasoned, "The need for a particular search must be balanced against the resulting invasion of personal rights." *Id.* at 1516. Thus, the question before the Court was "whether undoubted security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband." *Id.* at 1518. The Court answered that question in the affirmative: the facility's interest in avoiding potential health hazards like lice, *id.* at 1518, identifying gang affiliations, *id.* at 1519, and finding contraband, *id.* at 1520–22, justified the strip search, especially where no touching was involved. Moreover, the seriousness of the offense was not shown to be a predictor of which detainees might have contraband or be affiliated with a gang. *Id.* Accordingly, the county's policy to search any and all pretrial detainees was held to be consistent with the Constitution.

But *Florence* did not hold that jailers may, consistent with the Constitution, conduct a strip-search in any way, shape, or form. Indeed, the Supreme Court explicitly declined to address the type of search at issue here:

12

> Petitioner's *amici* raise concerns about instances of officers engaging in intentional humiliation and other abusive practices. There also may be legitimate concerns about the invasiveness of searches that involve the touching of detainees. These issues are not implicated on the facts of this case, however, and it is unnecessary to consider them here.

*Id.* at 1523; *see also Hebshi v. United States*, 32 F. Supp. 3d 834, 845 (E.D. Mich. 2014).

Here, Johns alleges not only that she was strip searched, but that she was strip searched in an abusive manner: while female officers performed the search, they did so in front of male guards, and with Johns' clothes being "ripped from her body." (R. 1 at ¶¶ 23–24.) Thus, the clearly-established right upon which Johns relies is "the right not to be subjected to a humiliating strip search in full view of several (or perhaps many) others unless the procedure is reasonably related to a legitimate penological interest." *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 575 (6th Cir. 2013) (quoting *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir.2002)).

The remaining question, then, is whether the Complaint makes plausible that Hale and Viet violated this clearly-established right. "The touchstone of whether a given search or seizure is reasonable is whether the jail's 'need for the particular search' outweighs 'the invasion of personal rights that the search entails.' To this end, '[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Williams v. City of Cleveland*, 771 F.3d 945, 950 (6th Cir. 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *Stoudemire*, 705 F.3d at 572).

To start, the allegation that the search was conducted in front of male officers (apparently with no reason) suggests that Hale and Viet violated clearly-established law. The Sixth Circuit pointed out the "obvious" in *Stoudemire*: "a strip search is more invasive when it is performed where other people can see the person being stripped." 705 F.3d at 573. Moreover, the Sixth Circuit "has joined others in recognizing that a convicted prisoner maintains some reasonable

13

expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners." *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992); *see also Kent v. Johnson*, 821 F.2d 1220, 1227 (6th Cir. 1987) (holding that "assuming that there is some vestige of the right to privacy retained by state prisoners and that this right protects them from being forced unnecessarily to expose their bodies to guards of the opposite sex," a Fourth Amendment claim based on female guards surveilling male prisoners as they showered did state a claim).

District courts within this circuit have observed that cross-gender[1] strip searches are "a particularly severe intrusion on the right to privacy." *Mead v. Cty. of St. Joseph*, No. 1:06-CV-555, 2008 WL 441129, at *3 (W.D. Mich. Feb. 13, 2008); *Johnson v. City of Kalamazoo*, 124 F. Supp. 2d 1099, 1104 (W.D. Mich. 2000). Indeed, one court has gone so far as to state that "a pretrial detainee's right to privacy against forced exposure to members of the opposite sex was clearly established in July 2011[.]" *Muhammad v. Skinner*, No. 14-CV-12277, 2016 WL 3457940, at *12 (E.D. Mich. June 24, 2016) (citing *Stoudemire*, 705 F.3d at 750–52; *Cornwell*, 963 F.2d at 916).[2]

Although Defendants are correct that "gender of the parties is just one fact for the court to consider in determining the reasonableness of a given search or the legitimacy of a challenged practice," *Stoudemire*, 705 F.3d at 575, here, there is more. Johns also alleges that her clothing

---

[1] Although the search in *Stoudemire*, as here, was a same-sex strip search, the Sixth Circuit specifically framed the constitutional issue as quoted above, regardless of the gender of the officer performing it. *Stoudemire*, 705 F.3d at 575 ("Dunagan's position is that inmates have no right to be free from same-sex strip searches. But that is not the right that Stoudemire is seeking to vindicate. . . . Thus, Dunagan's emphasis on the fact that this was not a cross-gender strip search is unavailing.").

[2] Defendants cite *Rose v. Saginaw Cty.*, 353 F. Supp. 2d 900 (E.D. Mich. 2005), but that case evaluated the state of the law from May 1999 to December 2001.

was "ripped from her body" during the search. Whether Johns has employed the term "rip" literally or as a figure of speech, the word choice implies that the officers forcibly removed her clothing, rather than allowing her to undress herself. And the Sixth Circuit has recognized that "strip searches would be even more humiliating if, instead of giving detainees a chance to remove their own clothing, corrections officials simply did it for them." *Williams*, 771 F.3d at 955.

The same is true for the location of the search. While Johns has not alleged a particular location for the search, she has alleged that it was conducted in a place where male officers could see Johns' exposed body. This is enough to plausibly allege that the location made the search even more invasive. *See Stoudemire*, 705 F.3d at 573 (finding significant that inmate's cell door was open when she was searched, exposing her naked body to any passerby).

Moving to the justification for the search, the Court acknowledges the legitimate penological interests in strip searching pretrial detainees. But a jail may identify health hazards, gang affiliations, and contraband without "ripping" clothing from a detainee, in public, and in the presence of those of the opposite sex.

Additionally, on the record before the Court, there is nothing suggesting exigent circumstances that justified the manner in which Hale and Viet are alleged to have conducted the search, and this Court is to draw reasonable inferences in favor of Johns. *See Stoudemire*, 705 F.3d at 573–74 (stating that even though there was a legitimate purpose for the search, a further "question, then, is whether any exigent circumstances compelled [the officer] to strip search [the inmate] in view of other inmates and prison personnel").

In sum, at the time of the search, it was "clearly established that suspicionless strip searches were permissible as a matter of constitutional law, but only so long as they were

15

reasonable under the circumstances and performed pursuant to a legitimate penological justification." *Stoudemire*, 705 F.3d at 575. Johns has plausibly alleged a violation of this constitutional right.

Accordingly, the motion to dismiss will be denied as to Count II.

### C. Count III: Elliott Larsen Civil Rights Act

Michigan's Elliott Larsen Civil Rights Act "recognizes that freedom from discrimination because of sex is a civil right." *Hamed v. Wayne Cty.*, 803 N.W.2d 237, 243 (2011). Specifically,

> Except where permitted by law, a person shall not: (a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

Mich. Comp. Laws Ann. § 37.2302.

Before turning to the merits, the Court will address a few threshold issues. A 1999 Michigan Court of Appeals case, later vacated, held that prisoners could bring suit for discrimination against prisons under ELCRA. *Neal v. Dep't of Corr.*, 592 N.W.2d 370, 375 (1998), opinion vacated (June 25, 1999). In response to *Neal*, the Michigan legislature passed an amendment to ELCRA which redefined "public service" under the Act:

> "Public service" means a public facility, department, agency, board, or commission owned, operated, or managed by or on behalf of the state . . . except that public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment.

Mich. Compiled Laws § 37.2301(b). A court in this district found this amendment unconstitutional under the Equal Protection Clause. *Mason v. Granholm*, No. 05-73943, 2007 WL 201008, at *4 (E.D. Mich. Jan. 23, 2007); *but see Does v. Dep't of Corr.*, 878 N.W.2d 293, 308 (Mich. Ct. App. 2015) (concluding that *Mason* was nonbinding). Johns urges this Court to

do the same in response to Oakland County's argument that the amendment bars her ELCRA claim. (R. 14, PID 88.)

The Court declines to reach the constitutional question. For one, the County appears to have abandoned this argument in its reply brief. (*See* R.16, PID 162–63.) Furthermore, during the relevant time frame, Johns was not "an individual serving a sentence of imprisonment." Mich. Compiled Laws § 37.2301(b); *see Jermano v. Taylor*, No. 11-10739, 2013 WL 1316979, at *8 (E.D. Mich. Mar. 4, 2013), *report and recommendation adopted*, No. 11-10739, 2013 WL 1316958 (E.D. Mich. Mar. 29, 2013).

Another threshold issue is whether a jail facility is a "public facility" and therefore subject to ELCRA. It does not appear that the Michigan courts have ruled on this issue. It was raised in *Hamed*; however, both the Michigan Court of Appeals and the Michigan Supreme Court declined to address it. 803 N.W.2d 243 n.17 ("[A]ssum[ing], without deciding, that the Wayne County jail is a 'public service' as defined by MCL 37.2301(b)."); *Hamed v. Wayne Cty.*, 284 Mich. App. 681, 695, 775 N.W.2d 1, 9 (2009), *rev'd*, 490 Mich. 1, 803 N.W.2d 237 (2011) (declining to decide the issue because defendants had "abandoned that argument on appeal"). It does not appear that any Michigan court has ruled on the question since.

Defendants cite *Adderly v. Florida*, 385 U.S. 39 (1966), but that case involved protestors who were arrested at a Florida jail pursuant to a Florida trespass law, and Defendants make no effort to demonstrate how the case should influence a court interpreting and applying Michigan law. Accordingly, the Court has no reason to suspect that the Michigan courts, if faced with the issue, would rule that jails are not public facilities subject to ELCRA. *See Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607–08 (6th Cir. 2012) ("Faithful application of a state's law requires federal courts to anticipate how the relevant state's highest court would rule in the case,

17

and in doing so [they] are 'bound by controlling decisions of that court.' Where the Michigan Supreme Court has not addressed the issue presented, [the court] must predict how the court would rule by looking to all the available data[.]" (citations and internal quotation marks omitted)).

As to the merits, under ELCRA, "discrimination because of sex" includes hostile environment, Michigan Compiled Laws § 37.2103(i) and (ii), and quid pro quo claims, Michigan Compiled Laws § 37.2103(iii). Johns has attempted to allege both in this case. (R. 18, PID 230–31.)

To establish a hostile environment claim, Johns must show,

(1) [she] belonged to a protected group;

(2) [she] was subjected to communication or conduct on the basis of sex;

(3) [she] was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the [provision of public services] or created an intimidating, hostile, or offensive [public services] environment;

5) respondeat superior.

*Radtke v. Everett*, 501 N.W.2d 155, 162 (Mich. S. Ct. 1993); *see also Neal v. Dep't of Corr.*, No. 285232, 2009 WL 187813, at *2 (Mich. Ct. App. Jan. 27, 2009) (applying these elements to a hostile environment claim by Michigan prisoners against the Michigan Department of Corrections).

To establish a quid pro quo claim, Johns must show,

(1) that [she] was subjected to any of the types of unwelcome sexual conduct or communication described in the statute and

(2) that the public service provider or the public service provider's agent made submission to the proscribed conduct a term or condition of obtaining public

services or used the plaintiff's submission to or rejection of the proscribed conduct as a factor in a decision affecting his or her receipt of public services.

*Hamed*, 803 N.W.2d at 244.

Thus, in both a hostile environment and a quid pro quo claim, Johns must allege "unwelcome sexual conduct or communication[.]" "[C]onduct or communication that is gender-based, but that is not sexual in nature, cannot constitute sexual harassment." *Haynie v. State*, 664 N.W.2d 129, 135 (Mich. S. Ct. 2003). That is, "actionable sexual harassment requires conduct or communication that *inherently* pertains to sex." *Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 471–72 (6th Cir. 2012) (citing *Corley v. Detroit Bd. of Educ.*, 681 N.W.2d 342, 345 (2004)). Johns' Complaint does not adequately plead this element of her claims.

A plausible reading of the Complaint is that Johns was strip searched in the presence of male officers. The Court has already found that, taking those allegations as true, this search was invasive and humiliating. However, there are no allegations to indicate that the search was "inherently sexual." "The CRA targets conduct or communication of a sexual nature, not conduct or communication conveying nothing more than personal animosity." *Schmitt v. City of E. Lansing*, No. 307571, 2012 WL 6913785, at *3 (Mich. Ct. App. Nov. 20, 2012). To hold that a strip search, a matter of inmate intake procedure, is "inherently sexual" without specific allegations to that effect would be to open the door for all detainees to bring an ELCRA claim by virtue of being processed into Michigan jail facilities. Something more is required to state a plausible claim under ELCRA.

Moreover, with respect to her hostile environment claim, Johns has not pled allegations to show that she was subjected to the search on the basis of her sex. She merely alleges that "Plaintiff was treated differently than other inmates for the same or similar conduct." (R. 1 at ¶ 46.) Nothing in the Complaint indicates that male pretrial detainees were not also strip searched.

19

*See Radtke*, 501 N.W.2d at 163 ("[P]laintiff need only show that "but for the fact of her sex, she would not have been the object of harassment.").

Lastly, the case Johns cites in support of her quid pro quo theory actually shows why that theory is inappropriate for these allegations. In *Diamond v. Witherspoon*, 696 N.W.2d 770, 773 (Mich. Ct. App. 2005), female drivers brought an ELCRA claim against a police officer who pulled them over and then demanded sexual favors in exchange for not issuing citations. For example, the officer told one victim, "he could take her to jail or they could make some kind of 'arrangement,'" after which asked her to perform different sex acts. *Id.* at 774. She complied, and was let go without a ticket. *Id.* The court agreed with the plaintiffs that they each "suffered quid pro quo sexual harassment when [the officer] made their compliance with his sexual advances a condition of releasing them from his police authority." *Id.* at 776. But the Court cannot reasonably draw an analogy to *Witherspoon* on these facts. Johns urges that she had to submit to the demeaning strip search in order to avoid being subjected to further excessive force while in jail, but nothing in the Complaint supports that inference—Hale and Veit were not the arresting officers, and there are no allegations that anyone told Johns that noncompliance with the search would result in further force being used against her.

For these reasons, Defendants' motions to dismiss the ELCRA claim will be granted.

### D. *Monell*

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Johns alleges that Oakland County permitted the following customs or policies that resulted in the alleged constitutional violations: (1) "[f]ailing to adequately train and/or

supervise its police officers so as to prevent violations of citizens' constitutional rights"; (2) "[f]ailing to adequately train and/or supervise police officers regarding the proper use of force"; (3) "[f]ailing to adequately train and/or supervise police officers regarding conducting reasonable and lawful searches of pretrial detainees"; (4) "[f]ailing to adequately supervise, review, and/or discipline police officers whom Defendant County of Oakland knew or should have known were violating or were prone to violate citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in illegal conduct"; and (5) "[f]ailing to adequately train and/or supervise its police officers in the proper policies and procedures for effectuating an arrest without the use of excessive force." (R. 1 at ¶ 51.)

These allegations are no more than "formulaic recitation[s]" of one of the elements of Johns' claim, insufficient to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678, 681. In particular, the first, second, fourth, and fifth allegations merely allege, without any supporting detail, the "existence of a policy of inadequate training or supervision" with respect to use of force and searches of pretrial detainees. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)). The third merely alleges, without any supporting factual allegations, that there is "proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures," *Miller v. Calhoun Cty.*, 408 F.3d 803, 815 (6th Cir. 2005) (citation omitted).

And the case Johns cites in her response brief, *Estep v. City of Somerset*, No. 10-286-ART, 2010 U.S. Dist. LEXIS 135189 (Dec. 21, 2010), is distinguishable. (R. 14, PID 214.) In that case, the plaintiff, a police officer, alleged that the mayor of his city denied him a promotion because the officer had campaigned for a different candidate during the mayoral election, thereby

21

violating his First Amendment rights. *Id.* at *3. He alleged that the mayor had stated that he would never promote anyone who campaigned for an opposition candidate. *Id.* The *Monell* claim against the municipality survived, but not because the plaintiff made similar allegations as those Johns made. Instead, the claim survived because "Kentucky law gives the mayor of a city the authority to appoint and remove all city employees, including police officers . . . . Therefore, [the mayor's] decisions regarding employment matters could constitute the City of Somerset's official 'policy,' thereby potentially making the city liable under § 1983 for the [m]ayor's action." *Id.* at *10 (citations and internal quotation marks omitted). There are no such allegations regarding policymakers at the county level or statements by the officers that could properly be attributed to them here.

The *Monell* claim will be dismissed.

## IV. CONCLUSION

Johns has stated a claim under § 1983 for excessive force and unreasonable search. Accordingly, IT IS ORDERED that Defendant Oakland County's motion to dismiss (R. 6) is GRANTED. Defendants Harvey, Manier, Hale, and Veit's motion to dismiss (R. 17) is GRANTED IN PART AND DENIED IN PART. The remaining claims in this case are Count I and COUNT II.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  August 18, 2016

22

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 18, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson